IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

SECURITY NATIONAL INSURANCE COMPANY                    PLAINTIFF

VS.                                       CIVIL ACTION NO.  2:05CV2104KS-MTP

BROADHEAD BUILDING SUPPLIES, INC.;
JAMES ANSON BROADHEAD; JAMES LARRY
BROADHEAD; L. WESLEY BROADHEAD;
COVENTRY FIRST LLC; ROBERT A. GANZ;
EVANS/GIORDANO INSURANCE & FINANCIAL SERVICES;
KEVIN ANDERTON, JOHN A. WHITE AND JOHN DOE
DEFENDANTS A, B, C                                      DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on plaintiff's motion for summary judgment and defendant Broadhead Building Supplies, Inc.'s motion for summary judgment.  From its review of all matters made a part of the record of this case as well as applicable law, and being thus fully advised in the premises, the court finds that plaintiff's motion is well taken and should be granted and defendant Broadhead Building Supplies, Inc's motion is not well taken and should be denied.  The court specifically finds as follows:

FACTUAL BACKGROUND

Defendants Broadhead Building Supplies, Inc. ("Broadhead") and James Anson Broadhead are insured under a Comprehensive General Liability insurance policy #6727566 (the "Policy") issued by Plaintiff Security National Insurance Company ("Security").  "Coverage B Personal and Advertising Injury Liability," the only section of the Policy at issue before the

1

court,[1] provides in pertinent part that Security will "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." "Personal and advertising injury" is defined in Section V of the Policy as "injury, including consequential 'bodily injury' arising out of one or more of the following offenses:

(a) False arrest, detention or imprisonment;
(b) Malicious prosecution;
(c) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
(d) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
(e) Oral or written publication of material that violates a person's right of privacy;
(f) The use of another's advertising idea in your 'advertisement';[2] or
(g) Infringing upon another's copyright trade dress or slogan in your 'advertisement.'"

There is currently an action pending against defendants in the Circuit Court of Marion County, Mississippi, styled *White v. Broadhead Building Supplies, Inc., et al.* (Cause No. 32004-0220) (the "State Court Action"). On April 19, 2005, plaintiff John A. White filed a Second Amended Complaint in that action (the "State Court Complaint") seeking compensatory and

---

[1] In its opposition to Security's motion for summary judgment, Broadhead stated: "Broadhead does not suggest that any duty on the part of Security National may be found in Coverage A of the policy [covering Bodily Injury and Property Damage]. Broadhead agrees that there is no coverage under Part A...However, there clearly is coverage...in Coverage B, 'Personal and Advertising Injury Liability.'"

[2] "Advertisement" is defined in Section V as "a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."

punitive damages.  In the State Court Complaint, Mr. White generally alleges that Broadhead, together with others, either intentionally or negligently misrepresented to him the value of his life insurance policy, and that in reliance on these misrepresentations, Mr. White subsequently sold the policy to one of the defendants for a sum well below its value.

Specifically, Mr. White alleges that on December 1, 1986, he was issued a Universal Life Insurance Policy from Federal Kemper Life Assurance Company.  In the fall of 2002, Mr. White believed that he could no longer make the premium payments and sought advice from defendant Robert A. Ganz, an insurance agent, as to what he should do.  Mr. Ganz informed Mr. White of the possibility of selling his policy to defendant Coventry First LLC ("Coventry"), a company that specializes in purchasing insurance policies from insureds for less than their face value.  Mr. Ganz then contacted defendants James Larry Broadhead, James Anson Broadhead, and/or L. Wesley Broadhead, agents and employees of Coventry.   In or about December 2002 or January 2003, L. Wesley Broadhead provided advice to Mr. White regarding the sale of his life insurance policy to Coventry.  Mr. White alleges that defendants L. Wesley Broadhead, Kevin Anderton, Ganz and Coventry made fraudulent representations to him, as well as omitted certain facts and information, and that based on these misrepresentations and omissions, he sold his $100,000.00 policy to Coventry for $3,333.00, "an amount far below what is considered by the industry to be reasonable in similar circumstances."  Mr. White accuses the defendants of having committed fraud, negligence and conspiracy.  Mr. White asserts causes of action against Broadhead and James Anson Broadhead for fraud, fraudulent misrepresentation and/or negligent

misrepresentation,[3] breach of the duty of good faith and fair dealing, conspiracy, and intentional and/or negligent infliction of emotional distress.[4]

After receiving the State Court Complaint, Broadhead and James Anson Broadhead forwarded it to Security, along with a request that Security defend them in the State Court Action and indemnify them against any judgment that may be entered against them in the State Court Action. Security responded with letters that denied coverage, but agreed to provide a defense under a reservation of rights. Thereafter, on October 24, 2005, Security brought this action seeking a declaratory judgment that it is not obligated to defend or indemnify defendants in the State Court Action.[5] On May 30, 2006, Security moved for summary judgment and thereafter, on August 15, 2006, Broadhead moved for summary judgment.

---

[3] Although this count is listed under the section that is reserved for the defendant L. Wesley Broadhead, the allegations are made collectively against "the Defendants."

[4] Mr. White also asserts causes of action against defendant James Larry Broadhead for fraud, fraudulent misrepresentation and/or negligent misrepresentation, breach of the duty of good faith and fair dealing, conspiracy and intentional and/or negligent infliction of emotional distress; against defendants Ganz, Anderton, Evans/Giordano Insurance & Financial Services ("Evans/Giordano") and Coventry for fraud, fraudulent misrepresentation and/or negligent misrepresentation, breach of the duty of good faith and fair dealing, conspiracy, and intentional and/or negligent infliction of emotional distress; and causes of action against defendant L. Wesley Broadhead for legal malpractice, breach of fiduciary duty, fraud, fraudulent misrepresentation and/or negligent misrepresentation, breach of the duty of good faith and fair dealing, conspiracy, and intentional and/or negligent infliction of emotional distress.

[5] Security filed this action against all parties in the State Court Action, although only Broadhead and James Anson Broadhead are insured under the Policy and only those two defendants have requested a defense or indemnification under the Policy. Recognizing that the insureds were the primary subjects of this action, plaintiff and defendants Coventry, L. Wesley Broadhead, Ganz, Evans/Giordano, James Larry Broadhead and Mr. White submitted Agreed Orders on December 21, 2005 which permitted them to remain parties and be bound by judgment without having to participate in this litigation. Defendant Kevin Anderton was voluntarily dismissed from this action on January 17, 2006.

STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrates the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir. 1988).  The moving party, however, need not negate the elements of the non-movant's case.  *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) *(citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once the moving party satisfies its initial burden, the non-movant may not rest on the pleadings, but must identify specific evidence in the ... record demonstrating that there is a material fact issue concerning the essential elements of its case."  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citation omitted); *see also Celotex*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257.  "The moving party need not support its motion with affidavits or other evidence, but to defeat a motion for summary judgment the nonmovant must present evidence sufficient to establish the existence of each element of his claim as to which he will have the burden of proof at trial."  *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir. 1996) (citation omitted).  "[C]onclusory allegations, speculation and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."  *Douglass*, 79 F.3d

at 1429 (citation omitted).

## ANALYSIS

A liability insurer's duty to defend is broader than its duty to indemnify. A liability insurer has an "absolute duty to defend a complaint which contains allegations covered by the language of the policy." *Sennett v. USF&G Co.*, 757 So. 2d 206, 212 (Miss. 2000) (*citing Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996)); *see also Merchants Co. v. Am. Motorists Ins. Co.*, 794 F.Supp. 611, 617 (S.D. Miss. 1992) ("The duty to defend is broader than the insurer's duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is any basis for potential liability under the policy."). As long as the allegations in the complaint state a claim that is "within or arguably within" a policy's coverage, there is a duty to defend. *Ingalls Shipbuilding v. Transocean Offshore Inc.*, 410 F.3d 214, 225 (5th Cir. 2005), *reh'g denied en banc*, 423 F.3d 522 (5th Cir. 2005); *Am. Guar. & Liab. Ins. Co. v. 1906 Co.*, 273 F.3d 605, 610 (5th Cir. 2001). Put differently, Security can refuse to defend Broadhead and James Anson Broadhead in the State Court Action "only if it is clear from the face of the [State Court Complaint] that the allegations therein are not covered [by the Policy]." *Am. Guar.*, 273 F.3d at 610 (citations omitted). Moreover, where, as here, the underlying lawsuit alleges multiple grounds for recovery, the insurer "must provide a defense if any ground falls within the terms of the policy." *Id.* at 611 (citations omitted).

"Whether a liability insurance company has a duty to defend depends upon the language of the policy." *Sennett*, 757 So. 2d at 212 (*citing Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 403 (Miss. 1997)). In order to determine whether an insurer has a duty to defend under an insurance policy, Mississippi courts look to the "allegations of the complaint...[in the

6

underlying action]." *Id.* at 212 (*citing Delta Pride,* 697 So. 2d at 403) (brackets in original).  In doing so, the court must "look not to the particular legal theories" contained in the complaint, "but to the allegedly tortious conduct" that forms the basis of the lawsuit.  *Amer. Guarantee*, 273 F.3d at 610.

In interpreting insurance contracts, Mississippi courts give policy language its "plain and ordinary meaning," *Am. Guar.*, 273 F.3d at 611 ( citation omitted), and apply the "familiar rule of contract interpretation...that a clear and unambiguous contract will be enforced as written." *Delta Pride*, 697 So. 2d at 403 (citations omitted).  Any ambiguities in insurance contracts are construed against the insurance company and in favor of a finding of coverage, and any doubt as to the existence of a defense obligation is resolved in favor of the insured.  *Liberty Mutual Fire Ins. Co. v. Canal*, 177 F.3d 326, 331 (5th Cir. 1999); *Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 383 (5th Cir. 1998); *Delta Pride*, 697 So. 2d at 403 (citations omitted); *State Farm Mut. Auto Ins. Co. v. Scitzs*, 394 So. 2d 1371, 1373 (Miss. 1981).  However, the mere fact that the parties disagree about the interpretation of the contract does not make the contract ambiguous as a matter of law.  *Delta Pride*, 697 So. 2d at 404.  Moreover, a court must "not create ambiguities where none exist."  *Am. Guar.*, 273 F.3d at 611.

Turning to the facts of this case, the only definition of "personal and advertising injury" that Broadhead claims is applicable to the State Court Action is "oral or written publication of material that ... disparages a person's ... goods...".  Thus, the question for this court is whether the allegations in the complaint are within, or arguably within, this coverage.  No claim of "disparagement" appears in the State Court Complaint.  However, Broadhead argues that applying the "plain, ordinary and popular sense" definitions of disparage, "to depreciate by

indirect means," and goods, "personal property having intrinsic value,"[6] the allegations of the State Court Complaint fall within the coverage of the Policy because the gravamen of Mr. White's allegations is that defendants made representations which, by indirect means, reduced the value of his life insurance policy.

Applying Broadhead's proferred definition of "disparage," the court does not agree that the State Court Complaint alleges that Mr. White's insurance policy was depreciated by indirect means. Mr. White alleges that he sold his insurance policy at a depreciated price - *i.e.*, lower than its market value - based on defendants' misrepresentations as to its value. Mr. White is not, however, alleging that the policy itself was depreciated. Put another way, the alleged misrepresentations did not cause the depreciation of Mr. White's insurance policy, but rather they caused Mr. White to sell the policy at an allegedly depreciated value. Thus, the allegations in the State Court Complaint simply do not fit into this definition of "disparage."[7]

Moreover, Broadhead can cite to no authority interpreting the provision to cover the claims in the State Court Action. Rather, courts have rejected attempts to construe similar policy provisions as broadly as Broadhead urges. In *Hobson v. Robinson*, 2005 WL 1660267 (N.D. Miss. July 8, 2005), a case strikingly similar to the case *sub judice*, plaintiffs asserted claims of fraud, misrepresentation and breach of contract against defendants arising out of their purchase of a health insurance policy. Plaintiff argued that such claims were covered by defendants' liability insurance, which covered "advertising injury" (defined to include "oral or written publication of

---

[6] *Webster's Ninth New Collegiate Dictionary* (1988).

[7] Nor, for that matter, do they fit into the legal definition of "disparagement" as "[a] false and injurious statement that discredits or detracts from the reputation of another's property, product, or business." *Black's Law Dictionary* (2004).

material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services"). *Id.* at * 3. The court expressly rejected this argument, stating: "Even a liberal reading of this definition and the coverage provision would not entitle the Plaintiffs to the benefits of the policy for the individual Defendants' alleged misrepresentations or negligence. Moreover, if the policy were, for some unforeseen reason, considered ambiguous, no reasonable interpretation could result in the Plaintiffs' favor." *Id.* And in *PYCA Indus., Inc. v. Harrison Cty. Waste Water Mgmt. Dist.*, 81 F.3d 1412, 1420 (5th Cir. 1996), the court examined a provision in a policy providing coverage for personal injury resulting from "oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." The court concluded that this language is "clearly targeted at libel and slander actions," and therefore held that a tortious interference with contract claim was not covered.[8] *Id. See also Lamar Adver. Co. v. Continental Cas. Co.*, 396 F.3d 654, 658 n.4, 663-65 (5th Cir. 2005) (applying Louisiana law, holding that factual allegations underlying claim of negligent interference with prospective advantage did not state claim for disparagement and therefore upholding lower court's denial of coverage under liability insurance policy covering "[o]ral or written publication of material that...disparages a person's

---

[8] Broadhead argues that this is mere dicta. However, although the issue in *PYCA* was whether the defendant had waived its sovereign immunity by purchasing liability insurance coverage, the court needed to determine whether or not the liability insurance policy covered the cause of action at issue - tortious interference with contractual relations. This required the court to analyze the language of the policy. 81 F.3d at 1419-20. The court ultimately concluded that the policy did not cover the cause of action and therefore sovereign immunity was not waived. *Id.* at 1420. This was a holding of the case.

...goods, products or services... .").[9]

Broadhead's argument - albeit a creative one - is unconvincing to this court. This court will not create an ambiguity in the Policy where one does not exist, nor will it extend Security's duty to defend or indemnify beyond what it contracted for in the Policy. The allegations in the State Court Complaint are simply not covered by the plain, unambiguous language of the Policy and therefore Security has no duty to defend or indemnify Broadhead or James Anson Broadhead in the State Court Action.

IT IS, THEREFORE, ORDERED AND ADJUDGED that plaintiff's motion for summary judgment and for a declaration that is has no obligation to defend or indemnify Broadhead or James Anson Broadhead in the State Court Action [**# 21**] is granted, and defendant Broadhead's motion for summary judgment [**# 30**] is denied.

IT IS FURTHER ORDERED AND ADJUDGED that all other pending motions, if any, are dismissed as moot.

SO ORDERED and ADJUDGED on this, the 19th day of October, 2006.

                                    s/ *Keith Starrett*
                                    UNITED STATES DISTRICT JUDGE

---

[9] The court does not need to, and therefore will not, reach the issues of whether Mr. White's life insurance policy is a "good" within the meaning of the Policy or whether any of the Policy's exclusions apply.